IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Elizabeth M. Reed,              :
et al.,                         :
                                :
        Plaintiffs,             :
                                :
    v.                          :   Case No. 2:09-cv-91
                                :
Sue Ellen Vickery,              :
et al.,                         :   Magistrate Judge Kemp
                                :
        Defendants.             :

OPINION AND ORDER

Defendants Woodland Run Equine Veterinary Facility, Inc. and Aaron Stingle, D.V.M., have filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Plaintiffs Elizabeth M. Reed and David P. Reed oppose the defendants' motion. For the following reasons, the motion for judgment on the pleadings will be granted in part and denied in part.

I. Standard of Review

A motion for judgment on the pleadings attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979). In ruling upon such motion, the Court must accept as true all well- pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973). It is with these standards in mind that the motion for judgment on the pleadings must be decided.

## II. Statement of Facts

The following facts are taken from the amended complaint. In or around April 2006, Elizabeth Reed traveled from Colorado to Ohio to meet with Bruce Vickery to discuss the purchase of a certain registered quarter horse. Mr. Vickery was acting as an agent for the horse's actual owner, Janette Heckart. The plaintiffs intended to use the horse as a show horse. Prior to the sale of the horse, Paul G. Rothaug, D.V.M. of Woodland Run conducted a pre-purchase examination of the horse. Dr. Rothaug and Woodland Run issued a report to the plaintiffs which indicated that there were no problems with the horse. Dr. Rothaug and Woodland Run did not disclose to the plaintiffs that Aaron Stingle, D.V.M., another veterinarian employed by Woodland Run had previously injected and/or otherwise treated the horse for lameness. Woodland Run and Drs. Rothaug and Stingle also failed to provide the plaintiffs with a complete copy of the horse's veterinary records.

The plaintiffs completed the purchase of the horse on or around July 18, 2006. When the horse arrived in late July at a boarding facility in Colorado, the plaintiffs noticed immediately that the horse showed signs of lameness. They took him to a local veterinarian for treatment. On or around September 6, 2006, the horse was disqualified from competition after a show judge determined that he was too lame to compete. The plaintiffs then took the horse to a veterinary clinic specializing in the care of large animals. The horse was diagnosed as being chronically lame, and the plaintiffs were advised that the horse might have to be turned out to pasture with the possibility that he could never be ridden again.

At the veterinarian's suggestion, Mrs. Reed contacted Mr. Vickery and Ms. Heckart on or around September 6, 2006, to inquire as to the previous lameness prevention program for the

horse.  Both Mr. Vickery and Ms. Heckart denied that the horse had any lameness or that he had ever been treated for lameness. On or around September 27, 2006, Mrs. Reed had a follow-up conversation with Ms. Heckart in which the prior owner admitted to Mrs. Reed that the horse had previously been injected to treat lameness.  On or around December 15, 2006, Mrs. Reed contacted Woodland Run to inquire specifically about the past treatment of the horse for lameness.  She was informed that Woodland Run's records showed that the horse was injected in early April 2006 at the request of Mr. Vickery with a combination of steroids and long-acting pain medication that was designed to mask the lameness for a period of up to 6-12 months.

　　The plaintiffs' fourth cause of action asserts claims against Woodland Run and Drs. Rothaug and Stingle for fraud and negligence.  The Reeds allege that based on the pre-purchase examination of the horse and the prior treatment of the horse at their veterinary facility, these defendants had a duty to disclose fully to them the horse's past treatment for lameness and the veterinary defendants' previously existing relationship with Mr. Vickery, as well as to provide them with a complete copy of the horse's veterinary records.  According to the amended complaint, the veterinary defendants breached that duty.  The Reeds further allege that the veterinary defendants made false and misleading representations to them by stating in the report that there were no problems with the horse when, in fact, the horse had previously been treated at Woodland Run for lameness. The Reeds claim that the defendants' conduct in this regard was either negligent or intentional.  The Reeds maintain that they relied, in part, on this report to purchase the horse.  As the result of the fraudulent and misleading representations, the Reeds state that they have been damaged in the amount of $25,000.00 for the value of the horse and $20,000.00 in medical

expenses for treatment of the horse's chronically lame condition.

### III. Legal Analysis

The veterinary defendants argue in their motion for judgment on the pleadings that the plaintiffs' negligence claims are (1) barred by the applicable statute of limitations; (2) are not cognizable against Woodland Run; and (3) cannot be maintained against Dr. Stingle due to the plaintiffs' alleged lack of standing.  The veterinary defendants also contend that, with respect to the fraud claims, the Reeds have failed to aver fraud with the particularity required under the federal civil rules.  Lastly, the veterinary defendants maintain that the Reeds may not, as a matter of law, recover their expenses for subsequent medical treatment of the horse or punitive damages.  The Reeds dispute each of these contentions.

### A. Statute of Limitations

The applicable statute of limitations for plaintiffs' negligence claims provides that "[a]n action for bodily injury or injuring personal property shall be brought within two years after the cause thereof accrued."  Ohio Rev. Code Ann. §2305.10 (Baldwin 2006).  The veterinary defendants contend that the plaintiffs' cause of action accrued on July 12, 2006, when the pre-purchase equine examination was performed.  Thus, they assert that because the Reeds did not bring their action until February 5, 2009, more than two years after the action purportedly accrued, the negligence claims against them are time-barred.

The Reeds concede that a horse is personal property for purposes of R.C. 2305.10.  They point out, however, that they did not learn until December 15, 2007, that the horse had previously been treated at Woodland Run for lameness.  They argue that pursuant to Ohio's discovery rule, their cause of action did not arise until they either knew or could have learned by exercising reasonable diligence that they had been injured by the veterinary

defendants' conduct.  Using December 15, 2007, as the relevant date, the Reeds contend that their complaint was filed well within the statute of limitations.  The veterinary defendants do not address the applicability of the discovery rule in their reply memorandum.

A court may grant judgment on the pleadings on a statute of limitations defense only where it is apparent from the face of the complaint that the action was not brought within the statutory period.  See Phelps v. McClellan, 30 F.3d 658, 662 (6th Cir. 1994); see also Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978)(Rule 12(b) motion to dismiss granted only where complaint shows that action is time-barred).  Consequently, if the allegations in the amended complaint provide a basis for tolling the statute of limitations, the veterinary defendants will not be entitled to judgment on the pleadings as to the Reeds' negligence claims.  See Austin v. Brammer, 555 F.2d 142, 143 (6th Cir. 1977)(per curiam).

The discovery rule in Ohio has a long and storied history. See Browning v. Burt, 66 Ohio St.3d 544, 558-59 (1993).  In Browning, the Ohio Supreme Court applied the discovery rule to R.C. 2305.10 for bodily injuries arising from a hospital's negligent credentialing of a physician.  Id. at 559.  The court recognized that the rule "must be specially tailored to the particular context in which it is to be applied." Id.  In the context of negligent credentialing, a cause of action for bodily injury does not accrue until the patient knows or should have known that she was injured as the result of the hospital's improper policies or procedures.  Id. at 560.  Nearly nine years later, the Ohio Supreme Court again applied the discovery rule to R.C. 2305.10, this time in the context of an employer intentional tort claim.  See Norgard v. Brush Wellman, Inc., 95 Ohio St.3d 165 (2002).  In Norgard, the court determined that the "trigger

5

date" for statute of limitations purposes was not when the plaintiff realized he was ill, but rather when he learned the facts necessary to prove knowledge on the part of his employer that his work-place injury was substantially certain to occur. Id. at 168-69. Although both Browning and Norgard involved claims for bodily injury, the Cuyahoga County Court of Appeals applied the discovery rule to a claim of injury to personal property under R.C. 2305.10. See Kay v. City of Cleveland, No. 81099, 2003 WL 125280 at *4 (Ohio App. 8 Dist. Jan. 16, 2003); see also Twee Jonge Gezellin, Ltd. v. Owens-Illinois, Inc., 238 Fed. App'x 159 (6th Cir. 2007)(parties agreed that discovery rule applied to wine producer's negligence claim).

Given the general applicability of the discovery rule to R.C. 2305.10, the Court finds that the complaint does not show on its face that the negligence claims are time-barred. The Reeds affirmatively pled that they did not discover that the horse had been previously treated at Woodland Run for lameness until December 15, 2007. See Stewart Coach Industries, Inc. v. Moore, 512 F.Supp. 879, 886 (S.D. Ohio 1981)(where complaint indicates that tortious conduct occurred at time outside statute of limitations, plaintiff who seeks to rely on discovery rule must affirmatively plead date of discovery). The failure to disclose this prior treatment, not the flawed pre-purchase examination, is the wrongful conduct which forms the basis for the Reeds' negligence claims against the veterinary defendants. Whether the Reeds should have discovered this failure to disclose at an earlier date is an issue of fact which cannot be resolved on a motion to dismiss or for judgment on the pleadings. See Craft v. Vanderbilt University, 18 F.Supp.2d 786, 796-97 (M.D. Tenn. 1998) (applying Tennessee law). Accordingly, the veterinary defendants are not entitled to judgment on the pleadings with respect to the negligence claims based on their statute of limitations defense.

## B. Claims Against Woodland Run

The veterinary defendants argue that Woodland Run may not be sued for professional malpractice because, as a corporation, it may not engage in the practice of veterinary medicine. They also contend that Woodland Run may not be held liable for the acts of its licensed veterinarians under a theory of <u>respondeat</u> <u>superior</u>. In response to these arguments, the Reeds maintain that they are not asserting a claim against either Woodland Run or the individual veterinarians for professional malpractice. In reply, the veterinary defendants state that Woodland Run cannot be liable for ordinary negligence because it owed no duty to the Reeds to disclose any records other than Dr. Rothaug's pre-purchase report of examination and the x-rays he took in connection with that examination.

In their reply, the veterinary defendants acknowledge that Woodland Run owed a duty to the Reeds to disclose the information obtained by Dr. Rothaug's in his pre-purchase examination and released in his subsequent report. Given the existence of Woodland Run's relationship with both the plaintiffs and Dr. Rothaug, Woodland Run had a corresponding duty not to provide false information to the Reeds concerning the condition of the horse, whether negligently or intentionally. <u>See</u> <u>Gilreath v. Ohio State Univ. Veterinary Hosp.</u>, No. 2001-06525-AD, 2002 WL 31953788 at *13 ¶75 (Ohio Ct. Cl. Sep. 24, 2002)(court considered plaintiff's allegations that defendant, through its employee, intentionally misled him regarding course of treatment for his dog).

Furthermore, unlike the situation in <u>Gilreath</u>, the misrepresentations and concealment made by defendants Rothaug and Woodland Run do not appear to be veterinary in nature. <u>See</u> <u>Gaines v. Preterm-Cleveland, Inc.</u>, 33 Ohio St.3d 54 (1987)(physician's knowing misrepresentation of material fact

7

concerning patient's condition upon which patient justifiably relies to his detriment, may give rise to cause of action in fraud independent from action in medical malpractice). Therefore, the fact that Woodland Run is not licensed to practice veterinary medicine is of no import when considering whether it may be liable for fraud or negligent misrepresentation. See McGill v. Newark Surgery Ctr., 113 Ohio Misc.2d 21, 31-32 (Licking Co. Com. Pl. 2001)(J. Frost) (hospital liability may be premised on respondeat superior, agency by estoppel, or for its own negligent conduct); see also National Fire Ins. Co. Of Pittsburg, PA v. Wuerth, –N.E.2d–, 2009 WL 2341993 at *7 (Ohio Jul. 29, 2009)(Moyer, C.J., concurring)(court's holding that law firm cannot directly commit malpractice and may only be held vicariously liable when its principals and associates commit malpractice does not preclude possibility that law firm may be directly liable on cause of action other than malpractice). After considering all of the well-pleaded factual allegations in the amended complaint as true, the Court does not conclude that Woodland Run is clearly entitled to judgment as a matter of law.

### C. Claims Against Dr. Stingle

The veterinary defendants assert that, in the absence of an express or implied contract for professional services between the Reeds and Dr. Stingle, the Reeds lack standing to sue Dr. Stingle for veterinary malpractice. The defendants declare that only Ms. Heckart, who retained Dr. Stingle through her agent, Mr. Vickery, would have standing to sue Dr. Stingle for professional veterinary negligence. The defendants further argue that Dr. Stingle was legally and ethically prohibited from disclosing confidential records of the horse's prior treatment to the Reeds.

The Reeds respond that their claim against Dr. Stingle does not arise from professional malpractice or a contractual relationship. They claim that even if Dr. Stingle was prevented

8

from disclosing the records directly to them, his failure to provide such records to other veterinarians at Woodland Run implicates him in the defendants' misrepresentations concerning the horse's condition. The Reeds also claim that the injections administered in April 2006 by Dr. Stingle had the effect of masking the horse's lameness and thus could be viewed as part of the defendants' efforts to conceal this condition from them.

To survive a motion to dismiss (or a motion for judgment on the pleadings), the complaint must contain sufficient facts to raise an entitlement to relief beyond the level of speculation. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In their amended complaint, the Reeds do not allege that Dr. Stingle was aware of the pre-purchase examination performed by Dr. Rothaug or that the horse was the same one he had previously treated for lameness. In their memorandum opposing judgment on the pleadings, however, the Reeds surmise that Dr. Stingle may have played a role in Woodland Run's failure to disclose the horse's prior treatment and that his injections of the horse implicate him in the defendants efforts to conceal the horse's lameness.

In the Court's view, there are simply not enough facts in the amended complaint to suggest that Dr. Stingle intended to mislead the Reeds either by administering injections to the horse to mask symptoms of chronic lameness or by concealing the records of that prior treatment. The most that can reasonably be inferred is that Dr. Stingle negligently failed to make his records available to Dr. Rothaug and Woodland Run. Because a claim for negligent representation requires an affirmative false statements and does not lie for mere omissions, see Leal v. Holtvogt, 123 Ohio App.3d 51, 62 (Miami Co. 1998), the amended complaint fails to state a claim against Dr. Stingle.

### D. Alleging Fraud With Particularity

The veterinary defendants deny that the amended complaint does alleges fraud with the particularity required by Fed.R.Civ.P. 9(b). The Reeds contend that their amended complaint can be construed as asserting a claim for fraud, but until discovery takes place they do not know whether the defendants' misrepresentations were merely negligent or made with the intent of misleading plaintiffs. The Reeds further contend that because the statute of limitations for fraud actions is four years in Ohio and because no pretrial order has yet issued in this case they will be able to amend their complaint again should their discovery reveal additional facts bearing on the issue of the defendants' intent. Nevertheless, the Reeds maintain that their amended complaint, as it stands now, more than satisfies the requirements of Rule 9(b).

"In alleging fraud ... , a party must state with particularity, the circumstances constituting fraud ..." Fed.R.Civ.P. 9(b). To satisfy this requirement, a plaintiff generally must describe the time, place, and content of the purported fraud and identify the parties who participated in it. See <u>Sky Technologies Partners, LLC v. Midwest Research Institute</u>, 125 F.Supp.2d 286, 299 (S.D. Ohio 2000).

The amended complaint alleges that defendant Rothaug conducted a pre-purchase examination of the horse on July 12, 2006, and that defendants Rothaug and Woodland Run thereafter issued a report to the plaintiffs indicating the horse exhibited no problems. The amended complaint further alleges that defendant Stingle, another veterinarian at Woodland Run, had previously injected and/or otherwise treated the horse for lameness in early April 2006, and the veterinary defendants, despite having a duty to do so, failed to disclose this prior treatment to the plaintiffs in the pre-purchase examination report. The amended complaint thus sufficiently alleges the

time, place, and content of the purported fraud, and identifies the parties who allegedly participated in it.

In a related argument, the veterinary defendants maintain that the amended complaint fails to allege facts to support each of the elements necessary to state a claim for fraud under Ohio law. The elements of fraud include: (1) a representation or, where a duty to disclose exists, concealment of a fact, (2) which is material to the agreement in question, (3) made falsely, with knowledge of its falsity, or with complete disregard as to its truthfulness, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) resulting harm proximately caused by the reliance. <u>Burr v. Board of County Com'rs of Stark County</u>, 23 Ohio St.3d 69 at syllabus ¶2 (1986). The elements of fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, and fraudulent non-disclosure are essentially the same as those for fraud. <u>See</u> <u>Gentile v. Ristas</u>, 160 Ohio App.3d 765, 781 (Franklin Co. 2005).

Accepting the well-pleaded factual allegations of the amended complaint as true, the Reeds have stated a claim of fraud against defendants Rothaug and Woodland Run. After conducting a pre-purchase examination of the horse, these defendants issued a report to the plaintiffs which indicated that there were no problems with the animal. The Reeds allege that these defendants concealed from them evidence of prior treatment of the horse for lameness. Having found that Woodland Run had a duty to disclose its prior treatment of the horse, the Court finds that the Reeds sufficiently alleged the first element of fraud. The amended complaint also states that they were purchasing the animal as a show horse. Therefore, the defendants' representation and concealment were material to the transaction. <u>See</u> <u>Leal</u>, 123 Ohio App.3d at 76 (fact is material if it is likely to affect conduct

11

of reasonable person regarding the transaction).

The Reeds allege that the defendants' representation was false in that the horse was, in fact, chronically lame at the time of the pre-purchase examination and that the veterinary defendants should have been aware of this fact given the horse's prior treatment at Woodland Run for lameness.  The defendants' intent to deceive may be inferred by the surrounding circumstances.  Id.

The question of justifiable reliance is one of fact and depends on the relationship between the parties.  Id. at 77.  The Reeds have alleged that they purchased the horse, in part, upon the representations made in the pre-purchase examination report and their lack of knowledge concerning the horse's prior treatment for lameness.  Given that the report was prepared for their benefit by a licensed veterinarian and veterinary facility, the amended complaint adequately alleges the plaintiffs' reliance was justifiable.

The Reeds also have alleged that they suffered an injury as the result of their reliance.  They paid $25,000.00 for a horse that turned out to be chronically lame and unfit for the purpose for which they had entered into the transaction.  In addition, the plaintiffs are incurring veterinary bills to the tune of $20,000.00 for treatment of the horse's chronically lame condition.  Accordingly, the Reeds have alleged in count four all of the elements of a claim for fraud.

### E. Damages Recoverable

The veterinary defendants argue that the $20,000.00 in veterinary bills incurred for the Reeds' subsequent treatment of the horse for its chronically lame condition are not recoverable in a cause of action for veterinary malpractice.  They further assert that because the amended complaint alleges only negligent conduct, the Reeds cannot recover punitive damages.  The Reeds

respond that since they are asserting fraud, and not professional malpractice, the veterinary defendants' arguments are without merit.

The veterinary defendants' first argument is based on the fact that animals are deemed personalty under Ohio law and that the measure of damages is limited to the difference between the animal's fair market value before and after the loss. Thus, "damages for family pets will seldom be awarded, since pets have little or no market value." Oberschlake v. Veterinary Assoc. Animal Hosp., 151 Ohio App.3d 741, 743 (Greene Co. 2003). The horse in this case is not a family pet, however. Rather, it is a show horse which, but for its chronically lame condition, would have considerable value. Moreover, the issue in Oberschlake and the other cases cited by the veterinary defendants involved non-economic damages such as pain and suffering and emotional distress. Here, the Reeds are seeking reimbursement for veterinary bills for treatment of the horse. Even if Ohio law would cap economic damages at the horse's market value, the Reeds would not be barred from recovering such damages since the amount they are seeking ($20,000.00) is less than the amount they paid for the horse ($25,000.00).

In addressing the second contention, the Court finds that regardless of whether the Reeds are asserting a claim for veterinary malpractice (which they expressly deny) or a claim of ordinary negligence, punitive damages are not available as to either claim. See Lewis v. Horace Mann Ins. Co., 410 F.Supp.2d 640, 664 (N.D. Ohio 2005)(punitive damages not available for negligence under Ohio law). Punitive damages may be recovered, however, for fraud if the Reeds can show actual malice. Id. at 665. To recover punitive damages for intentionally made false representations, such statements must have been relatively egregious. See Stuart v. National Indem. Co., 7 Ohio App.3d 63,

70 (Cuyahoga Co. 1982). Under the limited standard of review for Rule 12(c) motions, the Court cannot determine from the pleadings that the Reeds will be unable, as a matter of law, to recover punitive damages from the veterinary defendants on their fraud claim. This will be an issue for further factual development.

IV. Conclusion

Based on the foregoing reasons, the motion for judgment on the pleadings (#19) filed by defendants Woodland Run Equine Veterinary Facility, Inc. and Aaron Stingle, D.V.M, is granted in part and denied in part consistent with this opinion and order. The Clerk shall dismiss Dr. Stingle as a party to this action.

/s/ Terence P. Kemp
United States Magistrate Judge